IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITEDHEALTH GROUP EMPLOYEE HEALTH BENEFIT PLAN,<br><br>and<br><br>UNITEDHEALTH GROUP POST-EMPLOYMENT MEDICAL PLAN,<br><br>            Plaintiffs,<br><br>   v.<br><br>THE UNITED STATES OF AMERICA,<br><br>            Defendant. | Case No. 23-651 C<br><br>**COMPLAINT** |

Plaintiffs UnitedHealth Group Employee Health Benefit Plan[1] and UnitedHealth Group Post-Employment Medical Plan[2] (collectively, "Plaintiffs") bring this action against the United States ("Defendant" or "Government") seeking payment of the monies illegally exacted and held by Defendant in violation of Section 1341 of the Patient Protection and Affordable Care Act of 2010 and the Fifth Amendment to the United States Constitution.  In support of this action, Plaintiffs state and alleges as follows:

**NATURE OF ACTION**

1. Plaintiffs bring this action against the United States to recover monies illegally assessed and collected from Plaintiffs through Defendant's unlawful interpretation and

---

[1] Plaintiffs bring this action with the exception of certain insured medical plan options and excepted benefits that were available under the UnitedHealth Group Employee Health Benefit Plan.
[2] These two plans have since been incorporated into a single "wrap" ERISA plan, known as the UHG Inc. Group Benefits Plan.

application of Section 1341 of the Patient Protection and Affordable Care Act of 2010, codified in 42 U.S.C. § 18061.

2. In March 2010, Congress enacted the Patient Protection and Affordable Care Act[3] and the Health Care and Education Reconciliation Act[4] (collectively, the "Act" or the "ACA").

3. As part of the Act's implementation, the Transitional Reinsurance Program was created and includes a Transitional Reinsurance Contribution (the "Contribution") that is imposed on certain "contributing entities." Reinsurance is a form of risk spreading; one pays in based on the understanding that payments will be used to cover excess losses suffered by some of those that paid in. The Contribution thus serves to fund reinsurance payments to health insurance issuers that insure high risk individuals as new enrollees and incur corresponding high costs during the implementation of the Act. *See* 42 U.S.C. § 18061. "Contributing entities" are required to pay the Contribution to the federal government during the transition period, including benefit years 2014 through 2016.

4. The stated goal of the Transitional Reinsurance Program is to utilize a mechanism of reinsurance to help stabilize premiums in the individual health insurance market during benefit years 2014 through 2016—the first three years of the ACA's guaranteed issue (42 U.S.C. §§ 300gg-1, 300gg-3) and community rating (42 U.S.C. § 300gg) reforms, which prohibit health insurance issuers from denying coverage or charging higher premiums based on an applicant's medical condition or history.[5] Monies acquired through the Contribution are used to fund

---

[3] Pub. L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010).
[4] Pub. L. No. 111-152, 124 Stat. 1029 (Mar. 30, 2010).
[5] *See* 42 U.S.C. § 18061; The Transitional Reinsurance Program - Reinsurance Contributions, The Center for Consumer Information & Insurance Oversight, https://www.cms.gov/CCIIO/ Programs-and-Initiatives/Premium-Stabilization-Programs/The-Transitional-Reinsurance-Program/Reinsurance-Contributions.html (last visited Sept. 14, 2021) ("Section 1341 of the Affordable Care Act established a transitional reinsurance program to stabilize premiums in the individual market inside and outside of the Marketplaces.").

reinsurance payments to individual-market health insurance issuers that incur high claim costs for high-risk enrollees in the individual marketplace during the transition period.

5. As set forth below, Plaintiffs are self-administered, self-insured employee health and welfare benefit plans ("SISAs"). Defendant illegally assessed and collected the Contribution from SISAs, including Plaintiffs, for benefit year 2014.

6. Plaintiffs bring this action to recover the Contribution illegally exacted by Defendant under the Transitional Reinsurance Program.

7. As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs have been damaged in the amount of the Contributions collected and other damages to be determined at trial.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1491(a), this Court has subject-matter jurisdiction over and is the proper venue for Plaintiffs' claims for money damages and accompanying relief against the United States founded upon the Constitution, an Act of Congress, or any regulation of an executive department. Defendant illegally exacted monies under Section 1341 of the ACA, 42 U.S.C. § 18061, without due process of law and without just compensation, in contravention of Congress's unambiguous language exempting Plaintiffs from payment of the Contribution and in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The monies exacted from Plaintiffs were paid directly to Defendant or its agents.

## PARTIES

9. The Plaintiffs are self-administered, self-insured employee health and welfare benefit plans UnitedHealth Group Employee Health Benefit Plan and UnitedHealth Group Post-Employment Medical Plan.  Plaintiffs are located in Minnetonka, Minnesota.[6]

10. The Defendant is the Government, acting through the United States Department of Health & Human Services ("HHS"), a federal agency of the United States with its headquarters at 200 Independence Avenue S.W., Washington, D.C. 20201.  HHS promulgated a final rule purporting to relate to the interpretation and application of the Transitional Reinsurance Program and Contribution under the Patient Protection and Affordable Care Act of 2010, and unlawfully assessed and collected the Contribution for benefit year 2014 from Plaintiffs.

## FACTUAL ALLEGATIONS

### A. Self-Insured, Self-Administered Plans

11. Many Americans receive medical benefits through "self-insured plans", which are employer health plans where the employer collects premiums from participants and beneficiaries, and directly pays the health care costs incurred by its participants and beneficiaries.  Self-insured plans can be self-administered or administered by a third-party administrator.  The self-insured plans at issue here fall in the first group: self-insured, self-administered plans, or "SISAs".

12. The text of the Act is clear; SISAs are not health insurance issuers under the ACA:

> Health insurance issuer or issuer means an insurance company, insurance service, or insurance organization (including an HMO) that is required to be licensed to engage in the business of insurance in a State and that is subject to State law that regulates insurance (within the meaning of section 514(b)(2) of ERISA). This term does not include a group health plan.

45 C.F.R. § 144.103; see also 45 C.F.R. § 153.20.

13. Indeed, this Court in another case has determined that Congress did not intend for SISAs to make Transitional Reinsurance Contributions under the ACA because SISAs are not covered by the "plain language" of 42 U.S.C. § 18061. *Elec. Welfare Tr. Fund v. United States*, 155 Fed. Cl. 169, 183-84 (2021) ("HHS did not have authority to ignore the plain language of the statute in the name of public policy or administrative efficiency.").

14. As seen below, Congress did not intend for SISAs to be contributing entities to the Transitional Reinsurance Program under Section 1341.

**B.     The Transitional Reinsurance Program under Section 1341 of the ACA**

15. Pursuant to Section 1341 of the ACA, a Transitional Reinsurance Program was to be established in each state for benefit years 2014 through 2016. If a state did not establish a reinsurance program, HHS established its own program and performed all of the necessary functions for maintaining that program. *See* 42 U.S.C. § 18041.

16. Specifically, the Act directed that the Secretary of HHS "shall include provisions that enable States to establish and maintain" a Transitional Reinsurance Program, under which:

> (A) ***health insurance issuers, and third party administrators on behalf of group health plans***, are required to make payments to an applicable reinsurance entity for any plan year beginning in the 3-year period beginning January 1, 2014 . . .
>
> and
>
> (B) the applicable reinsurance entity collects payments under subparagraph (A) and uses amounts so collected to make reinsurance payments to health insurance issuers described in subparagraph (A) that cover high risk individuals in the individual market (excluding grandfathered health plans) for any plan year beginning in such 3-year period.

42 U.S.C. § 18061(b)(1) (emphasis added).

17. As plainly set forth in the Act, and as echoed in the legislative history, the payments to be mandated under the program were to be used by the reinsurance entity solely to

benefit "health insurance issuers" that provided coverage to "high risk individuals in the individual market." The participants in self-insured plans, including SISAs like Plaintiffs, are not participants in the individual health insurance market and thus can receive no payments from the reinsurance entity.

18. In March 2014, then-Secretary of the United States Department of Health & Human Services, Sylvia Mathews Burwell ("Secretary Burwell") and the United States Department of Health & Human Services ("HHS") promulgated a final rule purporting to define "contributing entity" under Section 1341 of the Act as follows:

> (1) A health insurance issuer; or
>
> (2) **For the 2014 benefit year, a self-insured group health plan** (including a group health plan that is partially self- insured and partially insured, where the health insurance coverage does not constitute major medical coverage), **whether or not it uses a third-party administrator**; and **for the 2015 and 2016 benefit years, a self-insured group health plan** (including a group health plan that is partially self-insured and partially insured, where the health insurance coverage does not constitute major medical coverage) **that uses a third-party administrator in connection with claims processing or adjudication** (including the management of internal appeals) **or plan enrollment for services** other than for pharmacy benefits or excepted benefits within the meaning of section 2791(c) of the PHS Act.

45 C.F.R. § 153.20 (emphasis added).

19. Defendant thus required that all SISAs that meet Secretary Burwell and HHS's definition of "contributing entity" pay the Contribution to the federal government for benefit year 2014 within certain specific timeframes.[7] All SISAs were required to pay the Contribution

---

[7] *See, e.g.*, 2015 ACA Transitional Reinsurance Program Annual Enrollment and Contributions Submission Form, The Center for Consumer Information & Insurance Oversight, https://www.regtap.info/documents/ric_announcement_formnowavailable_5cr_100115.pdf (last visited Sept. 14, 2021) ("All contributing entities must submit the 2015 ACA Transitional Reinsurance Program Annual Enrollment and Contributions Submission Form and schedule reinsurance contribution payment(s) no later than November 16, 2015.").

for benefit year 2014 but certain SISAs were excluded from payment of the Contribution for benefit years 2015 and 2016. Secretary Burwell and HHS required SISAs to pay the Contribution for benefit year 2014 purportedly on the basis of administrative convenience. *See* 79 Fed. Reg. 13744, 13773 (Mar. 11, 2014) (to be codified at 45 C.F.R. pts. 144, 147, 153, 155, 156, and 158) (including SISAs as contributing entities for benefit year 2014 "in order to avoid disruption to contributing entities").

    **C.**    **The Requirement That SISAs Be Deemed Contributing Entities For 2014 Was Unlawful**

    20.    Under the unambiguous language of the ACA, SISAs are not subject to the Contribution because they are (1) not health insurance issuers; and (2) do not use a third-party administrator. *See* 42 U.S.C. § 18061(b)(1)(A) ("*[H]ealth insurance* **issuers**, and ***third party administrators*** on behalf of group health plans," are required to pay the Contribution) (emphases added).

    21.    Under the unambiguous language of the ACA, there is no contribution method for SISAs. *See* 42 U.S.C. § 18061(b)(3)(B)(i) ("[T]he contribution amount *for each issuer* proportionally *reflects each issuer's fully insured commercial book of business* for all major medical products and the total value of all fees *charged by the issuer and the costs of coverage administered by the issuer as a third party* administrator[.]") (emphases added).

    22.    Under the unambiguous language of the ACA, SISAs are not required to pay, and the Secretary had no authority to require them to make any Contribution. *See* 42 U.S.C. § 18061(b)(3)(B)(iv) ("*[E]ach issuer's* contribution amount for any calendar year under clause (iii) reflects its proportionate share of an additional $2,000,000,000 for 2014, an additional $2,000,000,000 for 2015, and an additional $1,000,000,000 for 2016.") (emphasis added).

23. In addition, SISAs can in no way benefit from their payment of the Contribution. Pursuant to the Act, only health insurance issuers that offer insurance coverage in the individual market can receive reinsurance payments under the Transitional Reinsurance Program. *See* 42 U.S.C. § 18061(b)(1)(B) ("[T]he applicable reinsurance entity collects payments under subparagraph (A) and uses amounts so collected to make reinsurance payments to health insurance issuers described in subparagraph (A) *that cover high risk individuals in the individual market.*") (emphasis added). SISAs do not sell insurance in the individual market, which is defined as "the market for health insurance coverage offered to individuals other than in connection with a group health plan, or other than coverage offered pursuant to a contract between the health insurance issuer with the Medicaid, Children's Health Insurance Program, or Basic Health programs." 45 C.F.R. § 144.103.

24. Thus, although Defendant required SISAs to contribute to the fund, SISAs cannot participate in the Act's risk-spreading mechanism and no reinsurance payments will be made to SISAs under the Transitional Reinsurance Program. In testimony before Congress, HHS confirmed that reinsurance payments will be made to *issuers only* (not SISAs), stating "[r]einsurance payments are made to *individual market issuers* that cover high-risk individuals."[8]

25. Despite Congress's clear intent, Secretary Burwell and HHS promulgated a rule, purporting to implement the Transitional Reinsurance Program, which included SISAs as contributing entities and required them to pay the Contribution. *See* 45 C.F.R. § 153.

---

[8] *Poised To Profit: How Obamacare Helps Insurance Companies Even If It Fails Patients: Hearing before the Subcomm. On Economic Growth, Job Creation and Regulatory Affairs, 113th Cong. 75-91 (2014)* (statement of Mandy Cohen, M.D., Acting Deputy Administrator and Director Center for Consumer Information and Insurance Oversight Centers for Medicare & Medicaid Services), https://docs.house.gov/meetings/GO/GO28/20140618/102420/HHRG-113-GO28-Transcript-20140618.pdf.

D.   **HHS and Secretary Burwell Illegally Applied the ACA**

26.   Secretary Burwell and HHS have admitted that the express language of the ACA does not require SISAs to pay the Contribution:

> ***[O]ur view is that the better reading of section 1341 is that a self-insured, self-administered plan should not be a contributing entity***, but in order to avoid disruption to contributing entities, we propose to retain the prior definition of contributing entity for the 2014 benefit year.  Section 1341(b)(1)(A) of the Affordable Care Act states that health insurance issuers and TPAs on behalf of group health plans are required to make reinsurance contributions, ***but does not refer to self-insured, self-administered plans***.  The provision's reference to group health plans administered by TPAs, ***coupled with the omission of self- insured, self-administered plans, supports the proposed exemption***.

79 Fed. Reg. 13744, 13773 (Mar. 11, 2014) (emphasis added).

27.   Secretary Burwell and HHS excluded SISAs from the definition of contributing entity for benefit years 2015 and 2016.  *See* 45 C.F.R. § 153.20 (defining "contributing entity" for benefit years 2015 and 2016 to include only those self-insured group health plans that use a third-party administrator for certain functions).

28.   It was administratively feasible to exclude SISAs from the definition of contributing entity for benefit year 2014.  The final rule defining "contributing entity" was promulgated on March 11, 2014,[9] and the first payment of the Contribution for benefit year 2014 was not due until January 15, 2015—over ten months later.[10]

---

[9] *See* 45 C.F.R. § 153.20.
[10] For the 2014 benefit year, HHS offered contributing entities the option to pay: (1) the entire 2014 benefit year contribution in one payment no later than January 15, 2015 reflecting $63.00 per covered life; or (2) in two separate payments for the 2014 benefit year, with the first remittance due by January 15, 2015 reflecting $52.50 per covered life, and the second remittance due by November 15, 2015 reflecting $10.50 per covered life. The Transitional Reinsurance Program - Reinsurance Contributions (RIC), The Center for Consumer Information & Insurance Oversight, https://www.cms.gov/CCIIO/Programs-and-Initiatives/Premium-Stabilization-Progr ams/The-Transitional-Reinsurance-Program/2014-Benefit-Year-Page.html (last visited Sept. 14, 2021).

### E. Defendant Illegally Assessed and Collected the Contribution from Plaintiffs

29. Notwithstanding that the unambiguous language of the Act did not permit the Secretary to compel contributions from SISAs, Defendant collected and retained the Contribution for benefit year 2014 from Plaintiffs.

30. Pursuant to HHS rule, "[e]ach contributing entity must make reinsurance contributions annually: at the national contribution rate for all reinsurance contribution enrollees, in a manner specified by HHS." 45 C.F.R. § 153.400(a). According to HHS, the reinsurance contribution required from a "contributing entity" during a benefit year is calculated by multiplying "[t]he number of covered lives of reinsurance contribution enrollees during the applicable benefit year for all plans and coverage described in § 153.400(a)(1) of the contributing entity" by "[t]he contribution rate for the applicable benefit year." 45 C.F.R. § 153.405.

31. For benefit year 2014, Defendant required SISAs to pay a Contribution of $63 per covered life—which includes both plan participants and their dependents. Defendant collected and retained the Contribution for benefit year 2014 from Plaintiffs.

32. Defendant required Plaintiffs to pay the Contribution in the following manner: (1) no later than November 15 of the applicable benefit year, the contributing entity must submit an annual enrollment count of the number of covered lives of reinsurance contribution enrollees; (2) following the submission, HHS notifies the contributing entity of the amount of the reinsurance contribution to be allocated to reinsurance payments and administrative expenses for the applicable benefit year; (3) in the fourth quarter of the calendar year following the applicable benefit year, HHS notifies the contributing entity of the amount of the reinsurance contribution to be allocated for payment to the U.S. Treasury for the applicable benefit year; and (4) the

contributing entity is required to remit the reinsurance contribution within thirty days of the HHS notification.  *See* 45 C.F.R. 153.405(b) and (c).

33. SISAs could either pay the entire contribution amount for the Contribution in: (1) one payment at the beginning of the calendar year following the applicable benefit year (no later than January 15); or (2) two payments—one by January 15 of the calendar year following the applicable benefit year and the second by November 15 of the calendar year following the applicable benefit year.  Payment is made through the website www.pay.gov.

34. A percentage of the Contribution collected from SISAs each year was allocated to the General Fund of the United States Treasury and was not intended to fund the Transitional Reinsurance Program, but rather was intended to fund federal programs unrelated to the central stated purpose of the Contribution.  *See* 42 U.S.C. § 18061(b)(4)(B).

35. Plaintiffs made their first payment of the Contribution for benefit year 2014 on January 15, 2015, and made their second payment of the Contribution for benefit year 2014 on November 13, 2015.  In total, Defendant or its agents took control of and retained approximately $8,300,000.00 from Plaintiffs for payment of the Contribution for benefit year 2014.

36. Defendant's collection of the Contribution from SISAs, including Plaintiffs, for benefit year 2014 constitutes an illegal exaction without due process or just compensation, contrary to constitutional right, power, or privilege, in violation of the Due Process Clause of the Fifth Amendment, and otherwise not in accordance with law.  *See* U.S. CONST. amend. V.

37. Any exhaustion of administrative remedies would be futile because such remedies do not exist and even if they did, they would not provide the relief requested in this action. There is no administrative process for Plaintiffs to request refund of the Contribution imposed by Defendant.  Further, there is no administrative process for Plaintiffs to request a review of

Secretary Burwell and HHS's promulgation of 45 C.F.R. § 153.20 which includes SISAs in the definition of "contributing entity" for benefit year 2014.

38. Defendant's assessment and collection of the Contribution from SISAs is inconsistent with the unambiguous text of Section 1341 of the ACA and Congressional intent, and exceeds the statutory authority that Congress granted Secretary Burwell and HHS to implement the Transitional Reinsurance Program. Defendant's exaction of the Contribution constituted an illegal deprivation of property without due process of law or without just compensation in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

## CLAIM FOR RELIEF

### COUNT I

**ILLEGAL EXACTION IN VIOLATION OF THE ACA AND THE DUE PROCESS CLAUSE, U.S. CONST. AMEND. V**

39. Plaintiffs incorporate and re-allege the allegations in the preceding paragraphs as if fully set forth herein.

40. The Due Process Clause of the Fifth Amendment to the United States Constitution bars the government from appropriating Plaintiffs' "property without due process of law." U.S. CONST. amend. V.

41. An illegal exaction occurs where Plaintiffs have "paid money over to the Government, directly or in effect, and seek[ ] return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute or a regulation." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996).

42. Defendant has disregarded the unambiguous language of Section 1341 of the ACA, which exempts SISAs, including Plaintiffs, from payment of the Contribution for benefit

years 2014.  By requiring SISAs to pay the Contribution for benefit year 2014 and by collecting the Contribution for benefit year 2014 SISAs, Defendant has exceeded its statutory authority under the ACA and has exacted the Contribution from Plaintiffs without statutory authority in violation of the ACA and the Due Process Clause of the Fifth Amendment.

43. Moreover, the Due Process Clause of the Fifth Amendment to the United States Constitution prohibits from any person from being deprived of property "without due process of law."  Here, the notion that SISAs and the contributors and beneficiaries of the respective funds, can be compelled to contribute to a reinsurance fund from which they do not and cannot, receive any benefit (even assuming that this was Congress's intention), does not comport with the requirements of due process of law.

44. Because Defendant exacted the Contribution from Plaintiffs in contravention of the limitations imposed by Section 1341 of the ACA, Defendant has illegally exacted monies from Plaintiffs without statutory authority and in contravention of the ACA.

45. Defendant's imposition of the Contribution on SISAs constitutes an illegal exaction that deprives Plaintiffs of property without due process of law in violation of the Due Process Clause of the Fifth Amendment.

46. Plaintiffs are entitled to payment of the monies illegally exacted and held by Defendant in violation of Section 1341 of the ACA and the Due Process Clause, interest, attorneys' fees and costs, and other damages to be determined at trial.

F.  **PRAYER FOR RELIEF**

Plaintiffs request the following relief:

A.  Defendant to: pay the Plaintiffs the full amount of the Contribution illegally exacted from them for benefit year 2014 plus applicable interest; and

B.  That the Court awards such court costs, litigation expenses, and attorneys' fees as are available under applicable law.

May 3, 2023                                                                                         Respectfully submitted,

                                                                                                    /s/ *Stephen J. McBrady*
OF COUNSEL:                                                                                         Stephen J. McBrady

Charles Baek                                                                                        CROWELL & MORING LLP
Payal Nanavati                                                                                      1001 Pennsylvania Avenue, NW
                                                                                                    Washington, DC 20004
                                                                                                    Tel: (202) 624-2500
                                                                                                    Fax: (202) 628-5116
CROWELL & MORING LLP                                                                                SMcBrady@crowell.com
1001 Pennsylvania Avenue, NW
Washington, DC 20004

                                                                                                    *Counsel for Plaintiffs*